IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JOHN M FOSTER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | NO. 5:23-CV-143-TES-CHW |
| | : | |
| COMMISSIONER TIMOTHY C WARD, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**ORDER AND RECOMMENDATION**

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff John M. Foster, an inmate currently incarcerated at the Washington State Prison in Davisboro, Georgia, has filed his Recast Complaint (ECF No. 10) and paid the required initial partial filing fee. Plaintiff's claims are now ripe for review pursuant to 28 U.S.C. § 1915(e) and § 1915A. For the reasons discussed below, Plaintiff's claims that Defendants Taylor, Deputy Warden Ward, and Jackson failed to provide him with adequate medical treatment and his claims that Deputy Warden Ward and Jackson retaliated against him shall proceed for further factual development. It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.

**PRELIMINARY REVIEW OF PLAINTIFF'S RECAST COMPLAINT**

    **I.**    **Standard of Review**

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a

government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise

a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II. Factual Allegations and Plaintiff's Claims

### A. Medical Treatment Claims

In his Recast Complaint, Plaintiff primarily contends that he did not receive proper medical care at Washington State Prison ("WSP"). Recast Compl. 6, ECF No. 10. These allegations could give rise to claims that prison officials were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow*, 320 F.3d at 1243. A plaintiff must first "set forth evidence of an objectively serious medical need" and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* In other words, prison officials must both "know of and then disregard

an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam). For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). For the reasons discussed below, Plaintiff's Eighth Amendment claims against Defendants Taylor, Deputy Warden Ward, and Jackson shall proceed for further factual development, but Plaintiff's remaining claims concerning his medical treatment should be dismissed without prejudice.

*1. Claims against Defendants Taylor, Deputy Warden Ward, and Jackson*

Plaintiff is 69 years old and suffers from severe arthritis and an unspecified injury to his left shoulder. Recast Compl. 5-6, ECF No. 10. Despite these injuries, Defendants Taylor, Ward, and Jackson "refused" to assign Plaintiff to a bottom bunk when he arrived at WSP on November 2, 2021. *Id.* at 6.[1] Instead, these Defendants assigned Plaintiff to a ceiling bunk into which he had difficulty climbing, particularly while he was recovering from a hernia surgery on November 16, 2021. *Id.* Plaintiff contends he filed several grievances concerning this assignment, and Defendant Deputy Warden Ward ultimately moved Plaintiff to a floor bunk on January 26, 2022. *Id.* The floor bunk was also inappropriate for Plaintiff's condition, however, because Plaintiff had to get onto his hands and knees and crawl into and out of the floor bunk due to his "severe arthritis and advanced age." *Id.* at 8. This caused Plaintiff to suffer from bleeding and swollen knees and

---

[1] It is unclear whether Plaintiff had a bottom bunk profile at his previous facility.

significant pain. *Id.* Plaintiff remained in the floor bunk until June 21, 2022. *Id.* at 11. Plaintiff further alleges that he suffers from high blood pressure which has caused him to be "'dizzy' most of the time now," and he alleges he is "almost <u>blind</u> in [his] right eye . . . but still cannot get treatment" despite being seen by Defendant Taylor multiple times. *Id.* at 6, 11.

Plaintiff's allegations that he is suffering from severe arthritis and elevated blood pressure, both of which are causing him significant symptoms, can be considered serious medical needs at this early stage. *See Carter v. Broward Cnty. Sheriff's Office*, 710 F. App'x 387, 391 (11th Cir. 2017) (per curiam) (holding that plaintiff who experienced chest pain and shortness of breath when he did not receive medication for high blood pressure as prescribed sufficiently alleged he suffered from a serious medical need); *Leonard v. Dep't of Corrs. Fla.*, 232 F. App'x 892, 894 n.3 (11th Cir. 2007) (per curiam) (assuming that plaintiff had shown that his untreated arthritis was an objectively serious medical need).[2] Plaintiff has alleged that Defendants Taylor, Deputy Warden Ward, and Jackson refused to provide him with an appropriate bunk and that Defendant Taylor saw him several times for his blood pressure "but nothing was done." Recast Compl. 7, 9, ECF No. 10. The Court therefore cannot say that Plaintiff's Eighth Amendment claims are entirely frivolous at this stage, and they shall proceed for further factual development against these Defendants.

---

[2] Plaintiff also mentions that he has some sort of unspecified shoulder injury and "gum disease" that were "<u>not</u> addressed" by prison officials, Recast Compl. 11, ECF No. 10, but Plaintiff has not pleaded facts sufficient to show that these issues rise to the level of serious medical needs.

### 2. *Claims against Correct Care*

Plaintiff also asserts that Correct Care, presumably the entity contracted to provide health care to prisoners at WSP, should be held responsible for its failure to ensure Plaintiff had adequate medical treatment. A private contractor who operates a prison service can be held liable under § 1983 only if the alleged constitutional deprivation occurred as a direct result of the contractor's official policies or customs. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)); *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)); *see also Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (per curiam) (holding that when a private corporation contracts with the county to provide medical services to inmates, the entity should be treated as a municipality). To state a claim against Correct Care, Plaintiff must therefore show that his constitutional rights were violated; that Correct Care had a custom or policy that constituted deliberate indifference to those constitutional rights; and that the policy directly caused the violation. *See, e.g., Denham v. Corizon Health*, 675 F. App'x 935, 940-41 (11th Cir. 2017) (per curiam).

As noted above, Plaintiff has plausibly alleged that he did not receive adequate medical treatment in violation of his constitutional rights. Plaintiff also alleges that Correct Care had a "no treatment" policy and that this policy is responsible for over 200 deaths at WSP. Recast Compl. 8, ECF No. 10 (contending he has witnessed 29 deaths at WSP due to "no treatment" policy); *id.* at 13 (claiming the "no treatment" policy "has <u>killed over</u> 200 inmates at this prison, and around 20 in [his] dorm since 2021"). But Plaintiff has not pleaded facts sufficient to establish that Correct Health actually has a "no treatment" policy, to define the specific contours of that policy, or to explain how that policy caused

6

injury to other inmates. As an initial matter, it is clear that Plaintiff received some treatment from Correct Health providers, which undermines his contention that Correct Health maintains a "no treatment" policy. Plaintiff alleges he (1) received hernia surgery, *id.* at 6; (2) was seen twice by Defendant Taylor in December 2021, *id.* at 7; (3) was seen eight times by Defendant Taylor between February 15, 2022 and June 5, 2022, *id.* at 9; and (4) was seen by another provider and prescribed eyeglasses on June 21, 2022, *id.* at 11. Plaintiff also alleges that Correct Care has been "pushing 3rd world countries 'pills' at elderly inmates," which suggests he is receiving some form of medication for his condition (albeit presumably not the medication he prefers). *Id.*; *see also id.* at 13.

Perhaps more importantly, Plaintiff fails to provide any information concerning the deaths of the other inmates or explain how those inmates' deaths can be attributed to the alleged "no treatment" policy. Plaintiff's conclusory statement that other inmates at WSP died does not show that Correct Health deliberately adopted a policy that caused those inmates' deaths. Even if Correct Health providers failed to provide Plaintiff with adequate medical treatment, that failure alone does not demonstrate that Correct Health had a policy or custom to deny inmates adequate medical treatment. "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (internal quotation marks omitted). "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). Plaintiff's allegations that he personally did not receive adequate medical care are therefore insufficient to establish that Defendant Correct Health had a policy or custom

7

of providing inadequate care. Plaintiff's Eighth Amendment claims against Correct Health should accordingly be dismissed.

### 3. Claims against Defendant T.C. Ward

Plaintiff also seeks to hold former Georgia Department of Corrections Commissioner T.C. Ward liable for the alleged denial of adequate medical care. Recast Compl. 4, ECF No. 10. It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Rather, supervisors can only be held liable under § 1983 if they personally participated in unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

Plaintiff appears to contend Defendant T.C. Ward should be liable for the failure to provide Plaintiff with adequate medical care because, as the GDC commissioner, he reduced the state prisons' budgets "until all state prisons were operating on money received

8

from federal grant programs for state prisons that is not sufficient to satisfy the daily needs of prisoners." Recast Compl. 5, ECF No. 10. Plaintiff further contends that these "cutbacks have affected <u>all</u> 'essential services' provided by the prison" and that T.C. Ward "ordered" Defendants Wilkes, Ward, and Jackson to eliminate medical and dental care in accordance with this budget directive. *Id.* Plaintiff also states that these budget cuts have "caused <u>over</u> 500 deaths at the two prisons [he has] been housed [in] since 2019." *Id.* These allegations fail to state an actionable claim against Defendant T.C. Ward.

First, Plaintiff does not allege any facts to support his bald assertion that Defendant T.C. Ward ordered prison officials at WSP to eliminate all medical care. Indeed, as noted above, Plaintiff was frequently seen by Correct Care providers—and was even provided surgery—and he has not alleged that any individual declined to provide him with medical care for budget reasons. Similarly, Plaintiff has not pleaded any facts that would indicate that T.C. Ward's decision to fund the states' prisons using solely federal grant monies directly caused Defendants at WSP to delay or deny any medical care, or that T.C. Ward would have known that his budget decision would necessarily deprive inmates of their constitutional rights. *Cf. McDowell*, 392 F.3d at 1292-93 ("[A] County's liability cannot be dependent on the scant likelihood that its budget decisions would trickle down the administrative facets and deprive a person of his constitutional rights. Instead, liability must be premised on a finding that '*this*' budget decision was 'highly likely to inflict the *particular* injury [the plaintiff] suffered.").

Further, Plaintiff has not alleged facts sufficient to show that T.C. Ward had a persistent or wide-spread practice of making budget decisions that resulted in the denial of

9

adequate medical care. Plaintiff only provides specific facts about his own situation, and "[a] single incident, or isolated incidents, do not ordinarily satisfy th[e] burden" of proving a supervisory liability claim. *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). Although Plaintiff cursorily alleges T.C. Ward's budget cuts caused hundreds of deaths, he has not pleaded any facts concerning any of those deaths that could connect them to T.C. Ward's budget decisions. Plaintiff therefore cannot use those deaths to establish that T.C. Ward had an improper custom or policy that directly led to the denial of care. Plaintiff's claims against T.C. Ward should therefore be dismissed without prejudice.

B. <u>Retaliation Claims</u>

Plaintiff also alleges that Defendants Jackson and Deputy Warden Ward threatened him after he filed grievances concerning his bottom bunk profile. It is well established that an adverse action imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam). To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

Plaintiff contends that Defendant Jackson threatened to put Plaintiff in the hole if Plaintiff wouldn't "shut up" about the issues in his grievances. Recast Compl. 7, ECF No. 10. Plaintiff also alleges Defendant Deputy Warden Ward threatened to ship him to a more dangerous prison if Plaintiff "file[d] anything else." *Id.* at 7-8. These allegations are sufficient to permit Plaintiff's retaliation claims to proceed against Defendants Jackson and

10

Deputy Warden Ward. *See, e.g., Hoever v. Marks*, 993 F.3d 1353, 1356 (11th Cir. 2021) (en banc) (reversing dismissal of punitive damages claim for violations of First Amendment where inmate claimed correctional officers threatened inmate with physical violence in retaliation for filing grievances about mistreatment).

### C. Grievance Claims

Plaintiff also claims that various Defendants improperly denied his grievances or prevented them from being heard at all. *See, e.g.,* Recast Compl. 9-10, ECF No. 10. But Plaintiff does not have any due process right to access a prison's grievance procedure or in having those procedures properly followed. *See, e.g., Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam) (affirming dismissal of prison's claims that he was denied use of the prison's grievance procedure); *Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006) (per curiam) (prison officials' failure to respond to prisoner's letters and grievances and to follow prison regulations regarding grievance responses did not implicate due process concerns). Plaintiff has thus failed to state a cognizable constitutional claim against any Defendant concerning the handling of his grievance, and any such claims should be dismissed without prejudice.

### D. Remaining Claims

Plaintiff also raises a number of claims that are not directly related to his claims that Defendants failed to provide him with adequate medical treatment or retaliated against him for complaining about the lack of medical treatment. Plaintiff states that the prison is overcrowded and lacks adequate seating; as a result, inmates must often stand during the day which "is especially painful" for elderly inmates like Plaintiff. Recast Compl. 8, ECF

11

No. 10. Plaintiff additionally contends "the buildings are falling apart," inmates are exposed to the elements when walking around the prison, there is not adequate heating or winter clothing issued in the winter, and there is no ventilation in the summer. *Id.* at 8-9, 12. Plaintiff further alleges inmates who are not housed in the faith-based dorms cannot access religious services, and he was also deprived of a yearly calendar containing religious readings. *Id.* at 8-9. Plaintiff also appears to raise claims concerning the denial of due process in the state courts, the improper incarceration of prisoners to secure additional federal funding, and the denial of his parole. *Id.* at 11-12.

As Plaintiff was previously advised, the Federal Rules of Civil Procedure permit a plaintiff to join only related claims and defendants in a single complaint. To properly join defendants under Federal Rule of Civil Procedure 20(a)(2), the plaintiff must establish that he is asserting a right to relief against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and that "any question of law or fact common to all defendants will arise in the action." The Eleventh Circuit applies the "logical relationship" test to determine whether claims arise from the same transaction or occurrence for joinder purposes. *See, e.g., Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosp. Corp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)).[3] "Under this test, there is a logical relationship when the same operative facts

---

[3] The standard for whether claims arise from the same transaction or occurrence for Rule 20 purposes is the same as that used for compulsory counterclaims under Federal Rule of Civil Procedure 13. *See Smith*, 728 F. Supp. 2d at 1319.

serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp.*, 755 F.2d at 1455 (internal quotation marks omitted). In exercising its discretion regarding joinder, the Court should "provide a reasoned analysis that comports with the requirements of the Rule" and "based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009). The Court's discretion is also informed by the PLRA and its goals of preventing unwieldy litigation, ensuring the payment of filing fees, and limiting prisoners' ability to bring frivolous cases. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

In this case, Plaintiff has not pleaded facts sufficient to establish that his claims regarding his medical care are logically related to his remaining claims. The only link between Plaintiff's claims appears to be his contention that Defendant T.C. Ward's decision to rely upon federal funding for state prisons affected all aspects of prison life. As noted above, however, this allegation is not supported with specific facts and is tenuous, at best. The Eleventh Circuit has held that more than just a minimal connection between a series of different transactions or occurrences must exist before joinder is proper. *Skillern v. Ga. Dep't of Corr. Comm'r*, 379 F. App'x 859, 860 (11th Cir. 2010) (per curiam) (holding that prisoner failed to demonstrate that claims against defendants arose out of the same transaction, occurrence, or series of transactions or occurrences where the only "connection between the people and events [the prisoner] described" was that the actions "showed indifference to his failing health"); *see also State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416–17 (10th Cir. 1984) (affirming denial of joinder where

13

allegations against proposed defendant were "only tangentially related to the issues and series of transactions" in the pending case because "[d]ifferent elements of proof are required for the proposed cause of action, involving different questions of fact and law"). This minimal, tangential connection is not sufficient to establish that Plaintiff's claims bear any logical relationship to one another for purposes of Rule 20.

Plaintiff has also failed to clearly identify any question of law or fact that is common to all Defendants in this action. It appears that Plaintiff is attempting to circumvent the requirements of the PLRA by raising multiple, unrelated claims in the same lawsuit. Thus, even if joinder were otherwise appropriate, the Court should exercise its discretion to deny joinder. *Dorsey v. Varga*, 55 F.4th 1094, 1103 (7th Cir. 2022) ("A district court may, in its discretion, deny joinder even if the Rule 20(a)(2) requirements are met."). For these reasons, and because the statute of limitations would not bar Plaintiff from refiling his remaining claims if he acts promptly to do so, Plaintiff's remaining claims should be dismissed without prejudice. *See* Fed. R. Civ. P. 21; *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3d Cir. 2006) (holding that "district judges have discretion to remedy misjoinders either by severing claims or dismissing them without prejudice").

### III. Conclusion

For the foregoing reasons, Plaintiff's claims that Defendants Taylor, Deputy Warden Ward, and Jackson failed to provide him with adequate medical treatment and his claims that Defendants Deputy Warden Ward and Jackson retaliated against him shall proceed for further factual development. It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**ORDER FOR SERVICE**

Having found that certain of Plaintiff's claims against Defendants Taylor, Deputy Warden Ward, and Jackson require further factual development, it is accordingly **ORDERED** that service be made on these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. All Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

**DUTY TO ADVISE OF ADDRESS CHANGE**

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff.

The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each

party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 22nd day of August, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge