## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **JOHN M FOSTER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:23-CV-143-TES-CHW** |
| | : | |
| **COMMISSIONER TIMOTHY C WARD,** *et al.*, | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## ORDER AND RECOMMENDATION

Presently pending before the Court are a number of motions filed by *pro se* Plaintiff John M. Foster, an inmate currently incarcerated at the Dooly State Prison in Unadilla, Georgia. For the reasons discussed below, Plaintiff's motion to supplement his Recast Complaint (ECF No. 50) is **GRANTED in part**. Defendant Wellpath shall be added as a Defendant in this action, and Plaintiff's claims that Defendant Clack failed to provide him with adequate medical care for shingles and that Defendant Wellpath/Correct Care failed to provide him with adequate care for his eye infection at Dooly State Prison will proceed along with Plaintiff's claims that Defendants Taylor, Deputy Warden Ward, Jackson, and Correct Care failed to provide him with adequate medical care and his claims that Defendants Deputy Warden Ward and Jackson retaliated against him. It is **RECOMMENDED,** however, that Plaintiff's motion to supplement be **DENIED** as to the remaining claims in Plaintiff's Supplemental Complaint and that the Court strike the relevant portions of the proposed Supplemental Complaint and the declaration attached

thereto, as described in more detail below.  It is also **RECOMMENDED** that Plaintiff's

various requests for injunctive relief and/or a video hearing (ECF Nos. 36, 51, 59, 60) be

**DENIED.**  Plaintiff's motion for a ruling on his motion to supplement (ECF No. 55) and

his motion regarding service (ECF No. 58) are **DENIED as moot**.

## DISCUSSION

### I.        Motion to Supplement Complaint

Plaintiff first seeks leave to file a supplemental complaint that would "cover[] the

continuing constitutional violations occurring <u>since</u> the filing of the above named action."

Mot. Suppl. 1, ECF No. 50.  Federal Rule of Civil Procedure 15(d) provides that "the court

may, on just terms, permit a party to serve a supplemental pleading setting out any

transaction, occurrence, or event that happened after the date of the pleading to be

supplemented."  The Court has the discretion whether to permit leave to file a supplemental

pleading under this rule, and a supplemental pleading may be denied as futile "when the

claim, as amended, would still be subject to dismissal."  *Ga. Ass'n of Latino Elected*

*Officials, Inc. v. Gwinnett Cnty Bd. of Registrars*, 36 F.4th 1100, 1126 (11th Cir. 2022)

(internal quotation marks omitted).

### A.        Procedural History and Factual Allegations

Plaintiff's initial claims in this case arose from his treatment at the Washington State

Prison ("WSP") in Davisboro, Georgia.  Plaintiff's Recast Complaint (ECF No. 10)—the

operative pleading in this action—raised claims against former Georgia Department of

Corrections Commissioner T.C. Ward; WSP Warden Scott Wilkes; WSP Deputy Warden

of Security Ward; WSP Deputy Warden of Care and Treatment Jackson; Dr. Taylor, a

prison physician; and Correct Care, a private contractor responsible for medical care at WSP. Recast Compl. 4-5, ECF No. 10. After a preliminary review of the Recast Complaint, the following claims were allowed to proceed for further factual development: (1) claims that Defendants Taylor, Deputy Warden Ward, and Jackson were deliberately indifferent to Plaintiff's severe arthritis; (2) claims that Defendant Taylor was deliberately indifferent to Plaintiff's high blood pressure; and (3) claims that Defendants Jackson and Deputy Warden Ward retaliated against Plaintiff. Order & Recommendation 1, ECF No. 15. Plaintiff objected to the dismissal of the remaining claims (ECF No. 19). After consideration of those objections, the Court rejected the recommendation to dismiss Plaintiff's claims that Correct Care was deliberately indifferent to his serious medical needs and allowed those claims to proceed. The Court also dismissed without prejudice Plaintiff's remaining claims related to the free exercise of his religion and the conditions of his confinement. Order 1-2, ECF No. 21.

Plaintiff's motion for leave to supplement his Recast Complaint is dated December 11, 2023, and it is thus deemed to be filed on that date. Attach. 2 to Mot. Suppl. 9, ECF No. 50-2. In his proposed Supplemental Complaint and the declaration attached thereto, Plaintiff alleges that he was denied adequate medical care for a shingles infection he contracted at WSP. Attach. 2 to Mot. Suppl. 1, ECF No. 50-2. Plaintiff states that he noticed "spots" or blisters forming on his face on September 9, 2023. *Id.* He attempted to show the blisters to a pill call nurse, but he was ignored. *Id.* By the next day, the blisters covered the entire side of Plaintiff's face, his eye had swollen shut, and his face was

"'burning' really bad." *Id.* Plaintiff again notified a pill call nurse who told Plaintiff to put in a sick call. *Id.*

Plaintiff submitted a sick call the next day, Monday, September 11, 2023, which was a holiday. Attach. 2 to Mot. Suppl. 1, ECF No. 50-2. That same day, Plaintiff showed the two pill call nurses on duty his face, which was by now "severely swollen, with large 'blisters' and open wounds from the top of [his] head to [his] throat." *Id.* But Plaintiff was again refused treatment, and "the officer over medical," Defendant Clack, "threatened [Plaintiff] if [he] didn't leave medical." *Id.* at 1-2. On his way back to his cell, Plaintiff stopped at the counseling office to file a grievance. *Id.* at 2. Plaintiff states, "Everybody at counseling was <u>shocked</u> medical wouldn't see [him], but nobody did anything to help me." *Id.*

The next day, Plaintiff "went to work hurting really bad, and couldn't half see where [he] was going." Attach. 2 to Mot. Suppl. 2, ECF No. 50-2. Plaintiff's detail officer and the two floor officers on duty thus called medical and sent Plaintiff there for treatment. *Id.* Plaintiff states that Defendant Clack "cussed [him] out . . . for getting [his] detail officers involved and ran [him] off again." *Id.* On his way back to his detail, Plaintiff was stopped by a captain who sent him back to medical. *Id.* The physician's assistant who saw Plaintiff "had a <u>fit</u>" when she saw his condition and put Plaintiff on "'heavy' medication for 'shingles.'" *Id.* Plaintiff also saw a "video doctor" who was worried about Plaintiff's eye and recommended that Plaintiff see an eye doctor as soon as possible. *Id.* Plaintiff was given medication and sent back to his dorm. *Id.*

On September 14, 2023, the prison "had a major shakedown." Attach. 2 to Mot. Suppl. 2, ECF No. 50-2. Plaintiff passed out during the shakedown and was taken to medical in a wheelchair, where he was allowed to recover until his blood pressure returned to 170/90. *Id.* at 2-3. Plaintiff did not receive any other medical treatment until September 19, 2023, when he was again called to medical. *Id.* at 3. The PA who originally treated Plaintiff was "really mad" when she found out Plaintiff had not seen an eye doctor and promised him he would see the eye doctor soon. *Id.* Plaintiff states he was still experiencing significant pain in his eyes and that his face was very itchy. *Id.*

On September 20, 2023, Plaintiff saw an eye doctor in Atlanta. Attach. 2 to Mot. Suppl. 3, ECF No. 50-2. The doctor "had a fit about [Plaintiff's] eye, and said it was infected from the shingles and pressure damage." *Id.* The doctor prescribed two medications and told Plaintiff to come back in a week. *Id.*

On September 25, 2023, Plaintiff was scheduled to see the PA at WSP. Attach. 2 to Mot. Suppl. 3, ECF No. 50-2. This appointment was cancelled due to "medical emergencies and no staff" which "happens all the time" at the prison. *Id.* Plaintiff did see the PA the next day, and she was concerned because Plaintiff had not received his eye medicine. *Id.* Plaintiff states he did not receive his medication because a different private contractor fills prescriptions and sends them through the mail, which can cause delays. *Id.* Plaintiff did not receive his eye medications until October 11, 2023, three weeks after they were prescribed by the doctor in Atlanta. *Id.* Because Plaintiff did not receive his medication in the interim, he experienced "terrible pain" and was "bedridden." *Id.* at 4.

Plaintiff saw the PA at the prison again on October 25, 2023. She ordered Plaintiff more eye cream because his eye was still hurting.  Attach. 2 to Mot. Suppl. 4, ECF No. 50-2.  Plaintiff was also transported to Atlanta on November 1, 2023 to see the eye doctor, but apparently Plaintiff's appointment had been scheduled for the previous day, and the doctor was unavailable to see Plaintiff.  *Id.*  Plaintiff was transferred to Dooly State Prison ("DSP") on November 2, 2023.  *Id.*  Plaintiff states that prison officials "took all of [his] meds" when he left WSP.  *Id.*  Plaintiff also states that Defendant Jackson removed his safety bunk profile from his record.  Attach. 1 to Mot. Suppl. 6, ECF No. 50-1.

During intake at DSP, Plaintiff met with an unnamed individual from Defendant Wellpath, the medical contractor for DSP.  Attach. 2 to Mot. Suppl. 3, ECF No. 50-2.  At this time, Plaintiff's blood pressure was elevated, and he had lost nearly twenty pounds due to his shingles infection.  *Id.*  Plaintiff advised this individual that he had a "safety bunk" profile, but the individual assigned Plaintiff to a floor bunk because "that's all they had." *Id.*

Plaintiff states that by November 6, 2023, his "back was hurting and [his] eye was shut."  Attach. 2 to Mot. Suppl. 4, ECF No. 50-2.  Plaintiff thus "put in a sick-call and waited."  *Id.*  Plaintiff did not receive his medications until November 9, 2023, and he was told that he would have to wait for medical to enforce his "safety bunk" profile.  *Id.*  It does not appear that Plaintiff saw medical again until November 30, 2023 when he went for bloodwork and to sick call.  *Id.* at 5.  A technician took Plaintiff's blood, but Plaintiff was not seen for his substantive complaints "because of medical emergencies and no staff."  *Id.*

On December 5, 2023, Plaintiff received a call-out for dental. Attach. 2 to Mot. Suppl. 6, ECF No. 50-2. During his appointment, he complained about dizziness, and his blood pressure reading was elevated to 170/105. *Id.* Plaintiff was called back to medical later that day and had a video visit with a Wellpath doctor. *Id.* The doctor told Plaintiff that his "blood salt levels had bottomed out," and a nurse gave Plaintiff intravenous saline solution, took more blood, and sent Plaintiff back to the dorm. *Id.* Plaintiff contends no one checked his blood pressure at this time. *Id.* Plaintiff filed his motion to supplement six days later, on December 11, 2023. *Id.*

In his proposed Supplemental Complaint, Plaintiff seeks to raise claims that Defendants Clack and Wellpath failed to provide him with adequate medical treatment; that Defendants Jackson, T.C. Ward, and Barnard retaliated against him by transferring him to DSP, removing his "safety bunk" profile, and stopping his eye care; that Defendants T.C. Ward and Barnard retaliated against him by denying his parole; and that Defendants Wellpath, T.C. Ward, and Barnard have conspired to keep him in prison so that they receive federal grant money, which they use to fund the Georgia prison system and the state budget as a whole. Attach. 1 to Mot. Suppl. 5-8, ECF No. 50-1. As a result of these alleged constitutional violations, Plaintiff seeks various forms of injunctive relief, a clemency hearing, and compensatory damages. *Id.* at 8-9.

B.    Plaintiff's Claims

1.    *Claims against Defendant Clack*

Plaintiff first contends that Defendant Clack, whom Plaintiff identifies as the "officer over medical," refused to allow Plaintiff access to medical despite Plaintiff's

obvious need for medical care.  Attach. 1 to Compl. 2, ECF No. 50-1.  These allegations give rise to claims that Defendant Clack was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.  *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  To show that a state actor was deliberately indifferent to his serious medical needs, "a plaintiff must satisfy both an objective and a subjective inquiry."  *Id.*  A plaintiff must first "set forth evidence of an objectively serious medical need*"* and then prove that the defendant "acted with an attitude of 'deliberate indifference' to that serious medical need."  *Id.*  In other words, the defendant must both "know of and then disregard an excessive risk to the prisoner."  *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).  For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).  A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).  "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243).

Plaintiff has alleged facts sufficient to show that his infection with shingles was a serious medical need.  When Defendant Clack first denied Plaintiff medical treatment, Plaintiff alleges he had "large 'blisters' and open wounds from the top of [his] head to [his] throat," the right side of his face was "severely swollen," and his eye had swollen shut. Attach. 2 to Mot. Suppl. 1, ECF No. 50-2.  The next day, four officers and a prison captain

all recognized that Plaintiff required treatment and sent him back to medical.  *Id.* at 1-2. Despite Plaintiff's appearance, Defendant Clack again refused to allow Plaintiff to access the medical department to obtain treatment.  *Id.* at 2.  Plaintiff's motion to supplement his Recast Complaint to include these claims against Defendant Clack is therefore granted, and Plaintiff's claims that Defendant Clack was deliberately indifferent to his shingles infection shall proceed for further factual development.

### 3.    *Claims against Wellpath*

Plaintiff also seeks to add Wellpath as a Defendant in this action and states that Wellpath "is the new 'private contractor' responsible for inmate medical care."  Attach. 1 to Suppl. Compl. 2, ECF No. 50-1.  Correspondence between a deputy United States Marshal and an individual with Wellpath, however, indicates that Correct Care and Wellpath are the same entity.  Unexecuted Process Receipt & Return 2, ECF No. 54 (email from United States Marshal stating that individual from GDC's legal division advised him that "Correct Care is now Wellpath and is a contract company that does work within the GA DOC").  The Georgia Secretary of State's website confirms that Wellpath was previously named Correct Care Solutions LLC, that it changed its name effective January 30, 2019, and that its new name is Wellpath LLC.  *See* https://ecorp.sos.ga.gov/businesssearch/NameChangeHistory (searched "Correct Care" and "Wellpath") (last accessed Apr. 1, 2024).  The Clerk is therefore **DIRECTED** to add Wellpath LLC as a Defendant in this action, and Plaintiff's previous references to Correct Care shall be liberally construed as referring to both Wellpath and Correct Care.

Plaintiff's specific claims against Wellpath in his proposed Supplemental Complaint are not entirely clear.  To the extent Plaintiff is alleging that Wellpath/Correct Care denied him adequate treatment for shingles while he was at WSP pursuant to the "no treatment" or "fall out" policies he describes in his Recast Complaint, his allegations belie such claims.  Plaintiff received treatment for shingles and its symptoms on multiple occasions at WSP:[1]

(1)   September 12, 2023: PA treated Plaintiff for shingles with "heavy" medication, which Plaintiff was provided that day;

(2)   September 12, 2023: Plaintiff saw "video doctor" regarding shingles infection;

(3)   September 14, 2023: Plaintiff taken to medical after he passed out during shakedown and allowed to recover until shakedown was complete;

(4)   September 19, 2023:  Plaintiff saw PA regarding shingles infection;

(5)   September 20, 2023:  Plaintiff transported to eye doctor in Atlanta for eye infection;

(6)   September 26, 2023:  Plaintiff saw PA regarding shingles infection;

(7)   October 25, 2023:  Plaintiff saw PA, who re-ordered eye cream for shingles infection; and

(8)   November 1, 2023: Plaintiff transported to eye doctor in Atlanta, but he was not seen due to scheduling error.

---

[1] Although Defendant Clack refused to allow Plaintiff to access medical on September 11 and September 12th, Plaintiff does not allege that Defendant Clack is a medical professional or an employee of either Correct Care/Wellpath, and her actions therefore cannot be attributed to that entity.  *See* Attach. 1 to Compl. 2, ECF No. 50-1.  Plaintiff also fails to allege that Defendant Clack was in any way involved with any denial of treatment for his chronic arthritis and blood pressure conditions at WSP.

Attach. 2 to Mot. Suppl. Compl. 1-4, ECF No. 50-2.  While Plaintiff contends he did not receive the prescribed eye cream in a timely manner while at WSP, Plaintiff also states that the delay was due to an outside contractor who is not a party to this action.  Attach. 2 to Mot. Suppl. Compl. 3-4, ECF No. 50-2 (stating that an "out-of-state private contractor handles medication, and sends it through the postal service" which means that "with mail delays, it can take 10 days to get <u>any</u> med").  In addition, while Plaintiff did not see the eye doctor on November 1, 2023, Plaintiff acknowledges this was due to a scheduling error that—even if attributable to Wellpath/Correct Care—does not appear to have been more than negligent. *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1563 (11th Cir. 1993) (holding that merely "negligent conduct does not give rise to § 1983 liability for resulting unintended loss of or injury to life, liberty, or property").  Plaintiff has therefore failed to allege any facts suggesting that Wellpath/Correct Care was deliberately indifferent to his shingles infection while he was housed at WSP, and his motion to supplement to add these claims should therefore be denied.

Plaintiff also alleges that he has not received any care for his eye since he has been housed at DSP.  Attach. 2 to Mot. Suppl. 4, ECF No. 50-2.  It is clear that Plaintiff was diagnosed with what appears to be a significant eye infection resulting from his bout with shingles.  Plaintiff also alleges that his eye was still swollen shut when he arrived at DSP, and he did not receive medication to treat his eye for nearly a week. *Id.*[2]  Plaintiff further states he was still "half blind" at the time he filed his motion to supplement, even after he

---

[2] It is unclear whether the same unnamed contractor that provides medication to inmates at WSP is also responsible for filling prescriptions at DSP.

received his medication, and he suggests that he has not received any other treatment for his eye condition. *See* Attach. 1 to Mot. Suppl. 5, ECF No. 50-1. These allegations—when construed liberally and taken as true, as they must be at this early stage—are sufficient to permit Plaintiff's claims that Correct Care/Wellpath failed to provide him with adequate treatment for his eye infection at DSP to proceed for further factual development.

In addition, Plaintiff continues to allege that he has not received a medically-appropriate bunk at DSP and that his blood pressure has been "running wild" since he has been at DSP. Attach. 1 to Mot. Suppl. 5, ECF No. 50-1. As discussed above, these claims are already proceeding against Defendant Wellpath/Correct Care, and Plaintiff's motion to supplement his Recast Complaint to describe this continuing violation is therefore granted.

### 4.   *Retaliation Claims*

Plaintiff also alleges that Defendants Jackson, T.C. Ward, and Barnard have retaliated against him for filing grievances and lawsuits about his treatment in prison. More specifically, Plaintiff alleges that all three Defendants retaliated against him by transferring him to DSP—which Plaintiff describes as a "death trap prison"—and by stopping Plaintiff's eye care. Attach. 1 to Mot. Suppl. 6, ECF No. 50-1. Plaintiff also contends Defendants T.C. Ward and Barnard have retaliated against him by refusing to grant him early release or parole. *See id.* at 7.[3]

---

[3] Plaintiff does not appear to be raising claims against Defendant T.C. Ward in his supervisory capacity as the former Georgia Department of Corrections Commissioner; rather, the claims Plaintiff seeks to raise in his proposed Supplemental Complaint appear to relate solely to T.C. Ward's role as an appointed member of the Georgia Board of Pardons and Paroles. *See* Attach. 1 to Mot. Suppl. 7, ECF No. 50-1.

To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct, such as filing a grievance about the conditions of his confinement; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011); *see also Christmas v. Nabors*, 76 F.4th 1320, 1331 (11th Cir. 2023). Plaintiff has shown that he engaged in protected conduct, and his allegations that Defendants transferred him to a less favorable prison, interfered with his medical treatment, and failed to grant him early release or parole can constitute adverse actions. But Plaintiff does not plead any specific facts to support his conclusory allegations that Defendants took any of these actions because Plaintiff filed grievances or lawsuits. *See, e.g., Gonzales v. Archer*, 725 F. App'x 739, 742-43 (11th Cir. 2018) (per curiam) (inmate "failed to state a viable retaliation claim" where he "did not present facts that plausibly support a causal connection between" his grievances, the defendants, and the adverse actions taken against him); *Green v. Mowery*, 212 F. App'x 918, 920 (11th Cir. 2006) (per curiam) (inmate's "conclusory statement of retaliation," without more, was insufficient to establish violation of First Amendment).[4] Plaintiff's motion for leave to supplement his Recast Complaint to add these claims should therefore be denied.

---

[4] In his Recast Complaint, Plaintiff alleged Deputy Warden Ward threatened to ship Plaintiff to a more dangerous prison if Plaintiff filed additional grievances, but he does not allege any other named Defendant threatened to transfer him. Recast Compl. 7-8, ECF No. 10. Plaintiff's retaliation claim against Deputy Warden Ward based on these allegations is proceeding for further factual development. Plaintiff's claims that Defendant Jackson retaliated against him by threatening to put Plaintiff in the hole if he continued to file complaints are also already proceeding in this case.

5.    *Conspiracy Claims*

Plaintiff finally contends that "all Defendants are operating under a[n] agreed upon 'conspiracy' to deny humaine [sic] treatment of inmates, who are supplying the prison system with operating funds through their federal grant and social security eligibility." Attach. 1 to Mot. Suppl. Compl. 3, ECF No. 50-1.  According to Plaintiff, Georgia prison officials receive federal grant money for every inmate they keep in prison, and these funds are distributed to the various GDC facilities.  *Id.*  Plaintiff alleges GDC officials (and presumably, their contractors) purposely "operate these prisons on a less than adequate budget," and they reallocate the unused federal funds "back to the state treasury for use elsewhere."  *Id.*  Thus, Plaintiff surmises, GDC officials are incentivized to run understaffed and overcrowded prisons, to minimize the provision of medical care and other necessities to inmates, and to keep parole-eligible inmates incarcerated as long as possible because those inmates constitute a "funding source" for the state at large.  *See id.* at 4-5.

Plaintiff's factually unsupported allegations of a conspiracy fall short of stating a standalone conspiracy claim.  To establish a § 1983 conspiracy, Plaintiff "must show some evidence of agreement between the parties."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002); *Eubank v. Leslie*, 210 F. App'x 837, 842 (11th Cir. 2006) (per curiam) ("To establish a *prima facie* case of conspiracy, the plaintiff must allege, among other things, that the defendants reached an understanding to violate [his] rights." (internal quotation marks omitted) (alteration in original)).  Plaintiff has not alleged any facts that would support the existence of an agreement between all Defendants to divert federal funds in the manner described.  Perhaps more importantly, similar claims raised by Plaintiff have

14

already been considered and dismissed by this Court as "wildly conclusory and speculative." *Foster v. United States*, Case No. 5:22-cv-00424-TES-CHW, 2023 WL 2602499, at *3 (M.D. Ga. Mar. 22, 2023) ("*Foster I*"); *see also* Compl. 8, ECF No. 1 in *Foster I* (raising claims that Plaintiff "may <u>never</u> get out [of prison], as the money from me and <u>all</u> other eligible inmates <u>pay</u> to run the prison"); *id.* at 9 ("<u>All</u> eligible inmates are denied <u>release</u> based on 'their' ability to support the state jail and prison system.  <u>We</u> are denied appellate review due-porcess in our criminal appellate actions so we can be kept incarcerated and <u>fund</u> the system[.]").  Any potential claims that Defendants conspired to violate Plaintiff's constitutional rights are therefore subject to dismissal.[5]

### III.    Motions for Injunctive Relief and Video Hearing

Plaintiff has also filed two motions for a preliminary injunction requesting an order that he be provided with immediate medical care (ECF Nos. 36, 51) and a motion requesting an injunction ordering prison officials to provide him with law library access (ECF No. 60).  Plaintiff has also submitted more than one request for an emergency video hearing so that he may present oral argument on his motions for injunctive relief.  *See, e.g.,* Mot. Emergency Hr'g 1, ECF No. 60; Mot. Legal Research Inj. 5, ECF No. 60.

A preliminary injunction is a drastic remedy used primarily to preserve the status quo rather than grant most or all of the substantive relief sought in the complaint.  *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Fernandez-Roque v. Smith*, 671

---

[5] Plaintiff is also reminded that any challenges to the constitutionality of his conviction or sentence must be raised in a federal habeas corpus petition.  *See Prieser v. Rodriguez*, 411 U.S. 475, 500 (1973).

F.2d 426, 429 (11th Cir. 1982). Factors a movant must show to be entitled to preliminary injunctive relief include: "(1) a substantial likelihood of ultimate success on the merits; (2) the [preliminary injunction] is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the [preliminary injunction] would inflict on the non-movant; and (4) the [preliminary injunction] would serve the public interest." *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (per curiam).[6]

At this early juncture, the facts have not been sufficiently developed to conclude that there is a substantial likelihood that Plaintiff will ultimately prevail on the merits of this case. In addition, to the extent Plaintiff seeks an injunction permitting him additional law library access or other legal research assistance, Plaintiff is currently housed at DSP, and there are no claims proceeding against any DSP prison officials or any other individual who might have the authority to grant Plaintiff the relief he seeks. Similarly, Correct Care/Wellpath—the entity that appears to be responsible for providing Plaintiff with medical care—has not yet been served in this action and should be afforded an opportunity to respond to Plaintiff's allegations. Any claims for injunctive relief can also be addressed as this case proceeds. Accordingly, it is **RECOMMENDED** that Plaintiff's motions (ECF Nos. 36, 51, 59, 60) be **DENIED**.

---

[6] The standard for obtaining a TRO is the same as the standard for obtaining a preliminary injunction. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (per curiam); *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010) (per curiam).

### IV.    Motion Regarding Service on Correct Care

Plaintiff has also filed a motion requesting a proper address for Correct Care and for an extension of time to serve this Defendant (ECF No. 58).  Because Plaintiff is proceeding *in forma pauperis*, the Court must order that service be made via the United States Marshal's office.  Fed. R. Civ. P. 4(c)(3).  The Marshal has not yet been able to perfect service on Correct Care.  As noted above, correspondence from a deputy United States Marshal indicates that Correct Care is now Wellpath and that Defendant Taylor, the Health Services Administrator at Washington State Prison, cannot accept service on behalf of Wellpath.  Unexecuted Process Receipt & Return 2, ECF No. 54.

Federal Rule of Civil Procedure 4(d)(1)(A)(ii) provides that a request for waiver of summons directed to a corporation must be in writing and addressed "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  The current registered agent for Wellpath LLC is Corporate Creations Network Inc., 2825 Gordy Parkway, 1st Floor, Marietta, Georgia, 30066. *See* https://ecorp.sos.ga.gov/businesssearch/Business_Information (searched "Wellpath") (last accessed Apr. 1, 2024).  The Marshal is therefore **DIRECTED** to send a waiver request to Correct Care/Wellpath via the registered agent listed on the Secretary of State's website.  Plaintiff's motion regarding service (ECF No. 58) is **DENIED as moot.**

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to supplement his Recast Complaint (ECF No. 50) is **GRANTED in part**.  Defendant Wellpath shall be added as a Defendant in this action, and Plaintiff's claims that Defendant Clack failed to provide him with

adequate medical care for shingles and that Defendant Wellpath/Correct Care failed to provide him with adequate care for his eye infection at DSP will proceed along with Plaintiff's claims that Defendants Taylor, Deputy Warden Ward, Jackson, and Correct Care failed to provide him with adequate medical care and his claims that Defendants Deputy Warden Ward and Jackson retaliated against him.  It is **RECOMMENDED,** however, that Plaintiff's motion to supplement be **DENIED** as to the remaining claims in Plaintiff's Supplemental Complaint and that the Court **STRIKE** paragraphs 3, 4, 7, 8, 9, 10, 11, 14, 15, 16, and 17 of the proposed Supplemental Complaint (ECF No. 50-1) and paragraphs 21, 22, and 23 of Plaintiff's declaration in support of his Proposed Supplemental Complaint (ECF No. 50-2) related to these claims.  It is also **RECOMMENDED** that Plaintiff's various requests for injunctive relief and/or a video hearing (ECF Nos. 36, 51, 59, 60) be **DENIED.**  Plaintiff's motion for a ruling on his motion to supplement (ECF No. 55) and his motion regarding service (ECF No. 58) are **DENIED as moot**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the

right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

### ORDER FOR SERVICE

Having found that certain of Plaintiff's claims against Defendant Clack and Wellpath/Correct Care require further factual development, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

### DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.  The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing

supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 4th day of April, 2024.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge